## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| YOUTUBE, LLC and GOOGLE LLC, | )  Misc. Action No. 22-mc-00260 |
| | ) |
| Plaintiffs, | )  (Related Action Civ. No. |
| | )  3:20-cv-04423-JD (N.D. Cal.)) |
| v. | ) |
| | )  Hon. Colm F. Connolly |
| INTELLECTUAL PROPERTY LLC, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS'
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS
## IN RESPONSE TO THIRD-PARTY SUBPOENA

Frederick B. Rosner
The Rosner Law Group LLC
824 Market Street, Suite 810
Wilmington, DE 19801
T: (302) 319-6300
rosner@teamrosner.com

George A. Zelcs (*pro hac vice forthcoming*)
Randall P. Ewing (*pro hac vice forthcoming*)
Korein Tillery LLC
205 N. Michigan Plaza, Suite 1950
Chicago, IL 60601
T: (312) 641-9750
F: (312) 641-9751
gzelcs@koreintillery.com
rewing@koreintillery.com

*Counsel for IPLLC*

# <u>TABLE OF CONTENTS</u>

**Page**

I.      PRELIMINARY STATEMENT ....................................................................1

II.     THE UNDERLYING CLASS ACTION.......................................................2

   A.   The Complaint.....................................................................................2

   B.   YouTube's Counterclaims...................................................................3

   C.   YouTube's Subpoena to IPLLC and IPLLC's Response............................4

III.    ARGUMENT...............................................................................................5

   A.   IPLLC has produced all responsive documents from
        its custodian in the United States ...........................................................6

   B.   YouTube's motion to compel would force IPLLC to
        bear an expense vastly disproportionate to the needs of the case................7

      1.  The GDPR applies to the documents in Hungary
           and requires review and redaction of personal data...............................8

      2.  Complying with the GDPR would cost in excess of
           $190,000 for just one of the Hungarian custodians ..............................9

      3.  YouTube's counterclaims are only worth $20,000................................9

   C.   Comity interests weigh against compelling
        production of IPLLC's foreign documents ................................................14

IV.   CONCLUSION............................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

**Page(s)**

*Aozora New Zealand Ltd. v. Fru-Veg Mktg., Inc.*,
   2019 WL 6347572 (E.D. Pa. Nov. 27, 2019) ......................................... 13

*Finjan, Inc. v. Zscaler, Inc.*,
   2019 WL 618554 (N.D. Cal. Feb. 14, 2019) ......................................... 13

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994).................................................................................. 11

*Frederick Quinn Corp. v. W. Bend Mut. Ins. Co.*,
   2015 WL 2210336 (N.D. Ill. May 8, 2015)............................................. 12

*Giorgi Glob. Holdings, Inc. v. Smulski*,
   2020 WL 2571177 (E.D. Pa. May 21, 2020)........................................... 13

*Lenz v. Universal Music Corp.*,
2010 WL 702466 (N.D. Cal. Feb. 25, 2010) ......................................... 11, 12

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016) ................................................................. 11

*Melendez v. Subaru of Am., Inc.*,
   2021 WL 1929539 (C.D. Cal. May 13, 2021) ....................................... 12

*Schneider, et al. v. YouTube, LLC, et al.*,
   No. 20-cv-4432 (N.D. Cal. filed July 2, 2020)........................................ 2

*Societe Nationale Industrielle Aerospatiale v.*
*U.S. Dist. Ct. for S. Dist. of Iowa,*
   482 U.S. 522 (1987)........................................................................... 14, 15

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*,
   2019 WL 3369659 (D. Del. July 15, 2019) ............................................ 13

## <u>Statutes</u>

17 U.S.C. § 505 ................................................................................ 11

17 U.S.C. § 512(f) ..................................................................... 3, 10, 11

## <u>Rules</u>

D. Del. L.R. 7.1.3 .......................................................................... 18

Fed. R. Civ. P. 26 ...................................................................*passim*

Fed. R. Civ. P. 45 ............................................................................ 5

## <u>Other Authorities</u>

Regulation (EU) 2016/679 (Apr. 27, 2016) ............................................ 3, 8, 9

Non-party Intellectual Property LLC ("IPLLC"), by and through its attorneys, opposes the motion to compel filed by YouTube, LLC and Google LLC (collectively, "YouTube") seeking documents YouTube requested in a subpoena *duces tecum* served on IPLLC on June 2, 2021.[1] In support hereof, IPLLC incorporates the Declaration of Randall P. Ewing, dated June 22, 2022 ("Ewing Decl.") filed contemporaneously herewith.

## I.    PRELIMINARY STATEMENT

Over a year after serving a subpoena on non-party IPLLC, and after receiving all responsive documents from IPLLC's sole U.S. custodian, YouTube now seeks to burden IPLLC with the massive expense of collecting, reviewing, and producing electronically stored information ("ESI") from custodians in Hungary for the sole purpose of fishing for evidence in support of its counterclaims that are worth $20,000 at most. It would cost IPLLC a minimum of $190,000 to retrieve, host, review, and produce ESI in response to YouTube's subpoena in compliance with European privacy law. The vast difference between the minimal value of YouTube's counterclaims and the extraordinary cost of reviewing and producing IPLLC's foreign documents is the very sort of disproportionate burden the 2015

---

[1] YouTube has also moved to compel a privilege log. Plaintiffs' Opening Brief in Support of Motion to Compel Production of Documents in Response to Third-Party Subpoena [D.I. 2] ("Open. Br.") at 17. IPLLC agrees to produce a log for any documents withheld or redacted on the basis of privilege, if any, from the documents it has produced.

amendments to Fed. R. Civ. P. 26 were designed to eliminate. The Court should thus deny YouTube's motion.

## II.    THE UNDERLYING CLASS ACTION

### A.    The Complaint

YouTube's motion is a byproduct of a putative class action filed by several copyright holders in the United States District Court for the Northern District of California challenging YouTube's business model, under which YouTube makes money by the mass circulation of video content that infringes the holders' copyrights. *Schneider, et al. v. YouTube, LLC, et al.*, No. 20-cv-4432 (N.D. Cal. filed July 2, 2020) ("*Schneider*"). Among other things, the *Schneider* plaintiffs allege that YouTube allowed the continued infringement of their protected works even after they submitted takedown notices of the infringement to YouTube. Ward Ex. A.[2]

IPLLC is not a party in *Schneider*. *Id*. Instead, its connection to *Schneider* is that its owner, Emmy award-winning animator, director, and producer Gábor Csupó ("Csupó"), is also the owner of a company named Pirate Monitor LTD ("Pirate Monitor") that was once a named plaintiff in *Schneider*. *Id*. Pirate Monitor voluntarily dismissed its claims against YouTube with prejudice in March 2021,

---

[2] Reference to "Ward Ex. __" are to the Exhibits to the Declaration of Jennifer A. Ward in Support of Plaintiffs' Motion to Compel, filed June 8, 2022 (D.I. 3).

but the other *Schneider* plaintiffs have continued to pursue their claims. Ewing Decl. ¶ 2.

### B.   YouTube's Counterclaims

Presumably to divert attention from the wrongs alleged in *Schneider*, YouTube filed counterclaims against Pirate Monitor, Pirate Monitor LLC,[3] and Csupó for breach of contract, fraud, and violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f). Ward Ex. B. Importantly, YouTube's counterclaims do not name IPLLC as a party. *Id*. Pirate Monitor and Csupó have responded to YouTube's discovery requests in *Schneider* by answering interrogatories and producing all responsive documents in Csupó's possession. Ewing Decl. ¶ 7. That production, plus the documents produced by IPLLC, make up every document from Csupó, Pirate Monitor, and IPLLC that do not implicate concerns regarding compliance with the European Union's Regulation EU 2016/679 (Apr. 27, 2016), known as the "General Data Protection Regulation" or "GDPR." *Id*. ¶ 13.

Notably, YouTube admits that its counterclaims are worth no more than $20,000. Declaration of Jennifer A. Ward in Support of Plaintiffs' Motion to Compel, filed June 8, 2022 ("Ward Decl.") ¶ 4. However, to inflate the asserted

---

[3] To the knowledge of IPLLC's counsel, "Pirate Monitor LLC" is not a legal entity capable of suing or being sued.

value of its counterclaims, YouTube argues—without any support—that it has incurred and is entitled to "between $120,000 and $140,000 in attorneys' fees." *Id.*

## C.    YouTube's Subpoena to IPLLC and IPLLC's Response

YouTube served IPLLC with the subpoena at issue in June 2021. Ward Ex. E. Over the course of a year, counsel for IPLLC and YouTube exchanged over ten letters and met and conferred twice to try to reach agreement over the scope of the subpoena. Ewing Decl. ¶ 10. Ultimately, IPLLC agreed in good faith to search ESI in Csupó's possession, because he is the only IPLLC custodian in the United States. *Id.* ¶ 11. IPLLC then collected, reviewed, and timely produced those documents to YouTube. *Id.* ¶ 12.[4]

YouTube also requested expansive ESI from other sources, including at least two custodians in Hungary, Endre Holman ("Holman") and Zoltán Búzás ("Búzás"). IPLLC's counsel repeatedly told YouTube's counsel that collecting and reviewing documents from foreign custodians such as Holman and Búzás would be exorbitantly expensive, due largely to the cost of GDPR compliance. Indeed, simply hosting the documents of one custodian is estimated to be between $72,000

---

[4] YouTube misleadingly suggests that documents in Csupó's possession are being withheld based on a determination of whether the document relates to IPLLC's business or not. Open. Br. at 7. That is not true. If a document in Csupó's possession relates to Pirate Monitor, it has been produced in response to document requests directed to Pirate Monitor, and if a document in his possession relates to neither IPLLC nor Pirate Monitor but is nonetheless responsive, it has been produced in response to document requests directed to him personally.

4

and $98,000, which alone exceeds the damages sought in YouTube's counterclaims by four times. *Id*. ¶ 16. That estimate does not even take into account the additional cost of reviewing and producing the documents, a large portion of which are in Hungarian. *Id*. Reviewing that same custodian's documents is estimated to cost between $121,000 and $163,000. *Id*. ¶ 17. Thus, the total cost of a GDPR-complaint production for just one custodian would range from $193,000 to $261,000. *Id*. YouTube has never disputed IPLLC's vendor's cost estimate. *Id*. ¶ 18.

## III.   ARGUMENT

The Federal Rules of Civil Procedure are meant to ensure that requested discovery does not unduly burden parties and non-parties alike. The Rules recognize that non-parties to litigation should be protected from unnecessary expenses. Fed. R. Civ. P. 45(d) states that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 26(b) provides that parties may obtain discovery materials so long as they are relevant, nonprivileged, and "proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit." Rule 26 also places specific limitations on the production of ESI like the material YouTube seeks here, stating: "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B).

A straightforward application of these principles demonstrates that YouTube's request falls well outside the scope of permissible discovery under Rule 26. YouTube has already received all responsive documents from Csupó, IPLLC's sole custodian located domestically. The estimated cost to collect and review ESI from just one of the Hungarian custodians and ensure GDPR compliance—between $193,000 and $261,000—is grossly disproportionate to the $20,000 in damages YouTube seeks on its counterclaims. Denying YouTube's request for discovery from foreign custodians is also consistent with the comity concerns that courts consider when evaluating requests for evidence from abroad.

## A. IPLLC has produced all responsive documents from its custodian in the United States

As noted above, IPLLC has already produced all responsive documents that its sole U.S. custodian Csupó possessed. In addition, YouTube has already received any other documents that Csupó possessed from documents produced in party discovery directed to Csupó and Pirate Monitor. Thus, YouTube already has the documents it claims (Open. Br. at 8-11) it needs concerning Pirate Monitor and

6

Csupó, DCMA takedown notices, IPLLC's agents, and corporate formalities. For example, IPLLC has produced communications involving both Holman and Búzás concerning their work for IPLLC if they were in the possession of IPLLC's U.S.-based custodian. YouTube also suggests (Open. Br. at 10-11) that IPLLC has withheld responsive documents, but that is not true. If responsive documents existed, then they were produced by either IPLLC, Pirate Monitor, or Csupó. Not content with those productions, YouTube now seeks to saddle IPLLC, *a non-party*, with the additional (and prohibitively expensive) cost of collecting, reviewing and producing documents from custodians overseas.

### B.  YouTube's motion to compel would force IPLLC to bear an expense vastly disproportionate to the needs of the case

YouTube argues (Open. Br. at 13) that the information it seeks does not include personal data, but that is not so. IPLLC's counsel has investigated and confirmed that the ESI at issue here contains the names, email addresses, phone numbers, addresses, and other personal data of various individuals, including IPLLC's employees, independent contractors, and clients. Ewing Decl. ¶ 14. Moreover, the additional ESI YouTube seeks is all located in Hungary, which is a member of the European Union ("EU"). As summarized below, EU law restricts the production of documents without, at a minimum, review and redaction of "personal data." GDPR Art. 4(1). As a result, IPLLC must comply with the GDPR before any material can be produced.

7

1.    *The GDPR applies to the documents in Hungary and requires review and redaction of personal data*

The GDPR is a set of standards adopted to protect the privacy of the personal data of European residents. The GDPR applies to any organization anywhere that collects, targets, or processes data related to people in the EU. *See* GDPR Art. 3. The GDPR places strict limits on the processing[5] and transferring of EU residents' "personal data," which is defined broadly to include any information that can be used to identify an individual, including full names, location data, addresses, photographs, email addresses, bank details, social network posts, or a computer's IP address. *See id.* Art. 4(1). The GDPR applies even where documents containing personal data of EU/EEA residents are viewed by a user outside of the EU. *See id.* Art. 3.

The GDPR does not apply to information/personal data that has been "anonymized," or "rendered anonymous in such a manner that the data subject is not or no longer identifiable." *Id.* Recital 26. Thus, redacting personal data and sensitive personal data from both the body of a document and its metadata (a very

---

[5] "Processing" is defined broadly as "any operation or set of operations which is performed on personal data or on sets of personal data, . . . such as collection, recording, organization, structuring, storage, adaptation or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, restriction, erasure or destruction." *Id.* Art. 4(2).

involved process) is necessary. The penalties for violating the GDPR are substantial. *See id.* Art. 82, 83.

 2. *Complying with the GDPR would cost in excess of $190,000 for just one of the Hungarian custodians*

IPLLC has obtained a quote from HaystackID, a company specializing in forensic computer services and GDPR compliance. *See* Ewing Decl. ¶ 15, Ewing Ex. B. HaystackID estimates that the cost of retrieving, processing, and hosting Búzás's ESI for review would be about $85,000. *Id.* More specifically, using the midpoint of Haystack's estimates, the cost to collect, process, and host Búzás's 41 GB shared network data is estimated at $32,200, and the cost to collect, process, and host the data from Búzás's computers, email accounts, and chat messages (138 GB of data combined) is estimated to cost $52,900, not including the cost of review. *Id*. The cost to perform a GDPR-compliant review of the documents prior to production is also expensive. The estimate to review Búzás's ESI alone is between $121,000 and $163,000. Ewing Decl. ¶ 17, Ewing Ex. B. Thus, the grand total to collect, host, review, and produced the documents from just one of the Hungarian custodians is estimated between $193,000 and 261,000. *Id*. ¶ 18. These costs will go up substantially if additional custodians are added. Ewing Ex. B ¶ 17.

 3. *YouTube's counterclaims are only worth $20,000*

Here, the damages YouTube seeks on its counterclaims are $20,000, a fraction of the cost non-party IPLLC would have to incur to retrieve GDPR-

compliant ESI from Hungary. To make it appear as if there is more at stake, YouTube claims it is also entitled to recover the $120,000 to $140,000 in attorneys' fees it claims it is entitled to on its counterclaims. Ward Decl. ¶ 4. YouTube is wrong.

First, as matter of law, YouTube's right to recover attorneys' fees in connection with its counterclaims is far more limited than YouTube would have the Court believe. Under the so-called American Rule, parties typically bear their own litigation expenses, so YouTube would not be entitled to recover any fees if it prevailed on either of its first two counterclaims (breach of contract and fraud). YouTube's final counterclaim is based on an alleged violation of § 512(f) of the DMCA. Section 512(f) indeed provides that "any person who knowingly materially misrepresents under this section . . . shall be liable for any damages, including costs and attorneys' fees." 17 U.S.C. § 512(f). But § 512(f) clarifies that the fees available are only those "incurred" by the eligible plaintiff "as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it." Thus, while the damages that a plaintiff incurs may include "attorneys' fees," the fee component of the damages is limited to the fees incurred "as the result of" the service provider's removal or replacement of the material in question. Put another way, the mandatory fees under

§ 512(f) are limited to those incurred to address and correct the misrepresentation *prior to the initiation of litigation. Lenz v. Universal Music Corp.*, No. 07-cv-3783, 2010 WL 702466, at *11 (N.D. Cal. Feb. 25, 2010).[6] The recovery of any other costs and fees is governed by 17 U.S.C. § 505. *Id.*

Unlike § 512(f), an award of fees under § 505 is a matter of the court's discretion. 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."). Section 505 applies to "*any* civil action under this title," which would include an action under § 512(f). 17 U.S.C. § 505.

The Supreme Court has held that "[p]revailing plaintiffs and prevailing defendants are to be treated alike" for purposes of fee awards. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). YouTube's suggested reading of § 512(f) would turn this rule on its head. If YouTube were correct, a successful plaintiff in a § 512(f) action would *automatically* would recover its attorneys' fees as "damages," but a request for fees by a defendant prevailing under the Copyright Act would be

---

[6] YouTube claims that the Ninth Circuit "criticized the lower court's thinking on that point, albeit without directly reversing on the issue." D.I. 2, p. 16 n.5. Not so. However, the Ninth Circuit expressly stated that it "need not decide the scope of recoverable damages." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1157 (9th Cir. 2016).

11

subject to the discretionary inquiry under § 505. Neither the case law nor the language of the Copyright Act support YouTube's attempt to include its litigation fees as damages under § 512(f), and this Court should not do so.[7] Any request for post-litigation fees and expenses are governed by § 505. *Lenz*, 2010 WL 702466, at *11.

Second, as a matter of fact, YouTube's claimed attorneys' fees are unsupported and speculative. In cases involving 27 U.S.C. § 1332's amount in controversy requirement, courts frequently disregard such speculative assertions as to the amount of attorneys' fees. *See, e.g.*, *Melendez v. Subaru of Am., Inc.*, No. 21-cv-2163, 2021 WL 1929539, at *2 (C.D. Cal. May 13, 2021) ("Because Subaru presents no substantive argument or evidence concerning fees, the Court has no basis to include them in the amount in controversy."); *Frederick Quinn Corp. v. W. Bend Mut. Ins. Co.*, No. 14-cv-3850, 2015 WL 2210336, at *4 (N.D. Ill. May 8, 2015) (courts should "consider whether claimed attorneys' fees are 'plausible' and 'reasonable' when assessing whether a plaintiff has carried its burden of proof regarding the amount in controversy").

---

[7] Adopting YouTube's position would also encourage overzealous litigation like we see here. Spending six to seven times the value of a case on attorneys' fees is irrational and supports an inference that YouTube is pursuing its counterclaims as part of a broader litigation strategy rather than to vindicate its rights.

Forcing IPLLC, a non-party to the case, to bear the cost of GDPR compliance would not be proportional to the needs of the case under Rule 26(b)(1). As a result, YouTube's motion to compel should be denied because the cost of at least $190,000 for collecting, reviewing, and producing IPLLC's documents from just one foreign custodian far exceeds the $20,000 YouTube seeks in damages and would impose an undue burden and expense on IPLLC.[8] *See Aozora New Zealand Ltd. v. Fru-Veg Mktg., Inc.*, No. 17-cv-2594, 2019 WL 6347572, at *10 (E.D. Pa. Nov. 27, 2019) (in case valued at $70,000, forcing defendant "to pay more legal fees for further discovery would be disproportional to the fees and costs incurred to date combined with future fees and costs when viewed against the overall value of this case"); *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. 17-cv-1734, 2019 WL 3369659, at *1 (D. Del. July 15, 2019) (denying motion to compel when the cost to gather, review, log, and produce documents was over $100,000, despite the fact that the custodian may have discoverable information). Finally, YouTube's claim for injunctive relief is unsupported, as there is no evidence that IPLLC continues to engage in any alleged wrongdoing.

---

[8] YouTube's cases do not support a different result, as none involved disproportionately costly discovery from non-party foreign custodians. *See Giorgi Glob. Holdings, Inc. v. Smulski*, No. 17-cv-4416, 2020 WL 2571177 (E.D. Pa. May 21, 2020); *Finjan, Inc. v. Zscaler, Inc.*, No. 17-cv-6946, 2019 WL 618554 (N.D. Cal. Feb. 14, 2019).

### C.   Comity interests weigh against compelling production of IPLLC's foreign documents

Comity interests also caution against forcing production in this case. As the

U.S. Supreme Court observed:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. *When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses.* For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. *Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration.* In addition, we have long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation. *American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.*

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,

482 U.S. 522, 546 (1987) (internal citation omitted) (emphasis added). The factors

courts consider in determining whether principles of comity dictate against

ordering foreign discovery are:

> (1) the importance to the litigation of the documents or other information requested;

(2) the degree of specificity of the request;

(3) whether the information originated in the United States;

(4) the availability of alternative means of securing the information; and

(5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id.* at n.28 (citation omitted). On balance, these factors also weigh in favor of denying YouTube's motion.

First, the documents sought are not critical to the litigation. On the contrary, IPLLC has already produced everything in Csupó's possession. Ewing Decl. ¶ 11. Combined with the productions from the actual parties to YouTube's counterclaims—Pirate Monitor and Csupó—YouTube has all of the responsive documents in the United States. The documents located in Hungary are partially duplicative of the materials already produced. For example, YouTube already has documents about Pirate Monitor and Csupó, DMCA takedown notices, IPLLC's agents, and corporate formalities. Moreover, YouTube claims it already has enough evidence to make a compelling case against the counterclaim defendants, again indicating that the instant subpoena is pure gamesmanship and not because there is a legitimate need for additional discovery from IPLLC.

15

Second, to the extent the documents sought do not overlap with those already produced, YouTube's document requests are exceedingly broad. To comply with the subpoena's extremely broad topics seeking all documents and communications regarding numerous entities, individuals, and topics, IPLLC would be required to collect entire computers and entire contents of email accounts. Ewing Decl. ¶ 14. IPLLC has confirmed that personal data, such as employee and client names and contact information (amongst others) will be included in the documents falling within these broad requests. *Id*. Thus, there is no question that any document collection and review must be performed with GDPR compliance in mind.

Third, while the interest of American courts in adjudicating controversies before them on a full record is important, that interest does not outweigh European citizens' privacy interests, particularly when non-parties are concerned. This is all the more true because YouTube's subpoena does not appear to be a legitimate attempt to obtain necessary discovery to resolve a dispute, but instead appears to be an attempt to shift focus from YouTube's own wrongful conduct to collateral issues. Given the nature of the parties' dispute (counterclaims against a former named plaintiff in a larger class action alleging significant wrongdoing by YouTube), the damages at issue (YouTube's counterclaims involve damages of $20,000), and the fact that the Hungarian documents are partially duplicative of

16

documents already produced by IPLLC, the United States' interest in promoting full discovery to aid in the adjudication of disputes of its citizens is far less compelling and must give way to legitimate EU privacy considerations.

## IV.    CONCLUSION

The Court should deny YouTube's motion to compel because it would cost at least $190,000 to host, review, and produce documents from non-party IPLLC's foreign custodians, and ordering IPLLC to take on such a burden is grossly out of line with the $20,000 value of YouTube's counterclaims.

Respectfully submitted,

THE ROSNER LAW GROUP LLC

Dated: June 22, 2022          */s/ Frederick B. Rosner*
                              Frederick B. Rosner
                              The Rosner Law Group LLC
                              824 Market Street, Suite 810
                              Wilmington, DE 19801
                              T: (302) 319-6300
                              rosner@teamrosner.com

                              George A. Zelcs (*pro hac vice forthcoming*)
                              Randall P. Ewing (*pro hac vice forthcoming*)
                              Korein Tillery LLC
                              205 N. Michigan Plaza, Suite 1950
                              Chicago, Illinois 60601
                              T: (312) 641-9750
                              F: (312) 641-9751
                              gzelcs@koreintillery.com
                              rewing@koreintillery.com

                              *Counsel for IPLLC*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing document complies with the type-volume limitations specified in D. Del. L.R. 7.1.3 and the Court's November 6, 2019 Standing Order Regarding Briefing in All Cases because it uses a 14-point Times New Roman typeface and contains 3,919 words as determined by the word count feature of Microsoft Word (excluding the caption, tables, and signature blocks).

Dated: June 22, 2022

*/s/ Frederick B. Rosner*

Frederick B. Rosner

18